**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DARRELL BRANCH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:16-cv-01888** |
| | § | |
| **CITY OF BROOKSHIRE,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGEMENT**

1

## I.      <u>TABLE OF CONTNETS</u>

I.     TABLE OF CONTNETS ................................................................................ 2

II.    TABLE OF AUTHORITIES ......................................................................... 3

III.   Nature and Stage of the Proceeding ............................................................ 4

IV.    Statements of Issues .................................................................................... 4

V.     Summary of the Argument .......................................................................... 5

VI.    Facts ............................................................................................................ 5

VII.   Arguments and Authority ........................................................................... 6

   A.    Discrimination Termination under the Americans with Disabilities Act ...................... 7

   B.    Mr. Branch has established Disability Discrimination under the Burden Shifting
   Analysis .......................................................................................................... 8

      1.    Waiver on Disability ............................................................................ 8

      2.    Mr. Branch Was Qualified for his Job ................................................... 9

      3.    Mr. Branch Made An Accommodation Request Of Keeping His Position For One
      Month Until His Doctor Returns From Vacation ........................................ 11

      4.    The City failed to Accommodate Mr. Branch's request for additional leave ........... 14

      5.    The City Failed Engage in the Interactive Process ................................... 15

   C.    Mr. Branch Exhausted His Administrative Remedy ....................................... 17

VIII.  CONCLUSION ...................................................................................... 17

## II.      TABLE OF AUTHORITIES

Cases

*Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043 (8th Cir. 1999) ............................................. 13

*Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775 (6th Cir. 1998) ............................. 13

*Cook v. Morgan Stanley Smith Barney*, No. H-13-1321, 2014 U.S. Dist. LEXIS 112681 (S.D.

    Tex. Aug. 14, 2014) (Miller, J.)................................................................................. 15, 17

*EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606 (5th Cir. 2009) ..................................... 9, 14

*EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014)...................................................... 4, 7, 9

*Garcia-Ayala v. Lederle Parenterals, Inc.* 212 F.3d 638 (1st Cir. 2000)................................... 13

Gossett v. Du-Ra-Kel Corp., 569 F.2d 869 (5th Cir. 1978)......................................................... 7

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181 (2d Cir. 2006) ................................................ 13

*Haschmann v. Time Warner Ent Co.*, 151 F.3d 591 (7th Cir. 1998) ........................................ 13

*Holly v. Clairson Indus, LLC*, 492 F.3d 1247 (11th Cir. 2007)................................................... 13

*Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995) .............................................................................. 13

*Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243 (9th Cir. 1999)................................................ 13

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)............................................ 8

*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002) ............................ 13

*Taylor v. Rice*, 451 F.3d 898 (D.C. Cir. 2006) ........................................................................... 13

*Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661 (3d Cir. 1999)..................... 13

Rules

42 U.S.C. § 12102(1) .............................................................................................................. 4, 8

42 U.S.C. § 12112(a). ................................................................................................................. 7

Federal Regulations

29 C.F.R. § 1630.9 ..................................................................................................................... 15

### III.      Nature and Stage of the Proceeding

Discovery has been completed. Defendant has filed a motion for summary judgement.

### IV.      Statements of Issues

There is no dispute that The City of Brookshire fired Mr. Branch after numerous attempts to returned from medical leave. To establish a prima facie discrimination claim, Mr. Branch must show: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). Was Mr. Branch qualified as disabled under the ADA will be evaluated under subsection A of 42 U.S.C. § 12102(1).  Disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). To show he was qualified for his position as a Lieutenant who performed patrol duties, Mr. Branch must show that either: (1) he could perform the essential functions of the job in spite of his disabilities; or (2) that a reasonable accommodation of his disabilities would have enabled him to perform the essential functions of the job. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 691 (5th Cir. 2014)⬚ 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam))January of 2015.  Did the City of Brookshire interfered with Mr. Branch's rights by imposing additional return to work requirements in November and December of 2014.   Did Mr. Branch ask for reasonable accommodation from the City by asking them to extend his medical leave from December 2014 through January 20-14. Did the City failed to engage in an interactive process with Mr. Branch's return to work accommodation request.  Did the City violate the ADA by failing to accommodate Mr. Branch's request to extend his medical from December of 2014 to January of 2015. Did the City failed to engage in an interactive process with Mr. Branch's return to work accommodation

4

request. Did the City violate the ADA by failing to accommodate Mr. Branch's request to extend his medical from December of 2014 to January of 2015.

## V.      Summary of the Argument

Mr. Branch asked the City for a reasonable accommodation of waiting for less than a month before termination to give him the chance to get a more complete full medical release from his doctors. Mr. Branch made the request in December 2014 asking that the City not terminate him until his doctors return from holiday. The City refused this reasonable accommodation. Well within the requested accommodation period, Mr. Branch's doctor confirmed Mr. Branch's release to full-duty. The Coty refused to engage in an interactive dialogue concerning Mr. Branch's request for a reasonable accommodation.

## VI.      Facts

Dr. Arvind Bhimaraj released Mr. Branch back to work with no restrictions. *See* Exhibit 1 (11/19/2014 Medical Release No restrictions).  The City rejected this release and imposed on Mr. Branch a new requirement that was never presented to him before. The City gave required Mr. Branch a job description for a Police officer and required him to get his doctor to approve the list in a new medical release.  *See* Exhibit 9 Declaration of Kim Branch.   The City was aware that Mr. Branch's doctor was not in town due to the Christmas vacation and would not return until January 2015. The City required Mr. Branch to provide an updated doctor's note by December 11, 2014.  *See* K. Branch Dec at ¶¶4-5. Mr. Branch was able to obtain only a generic medical release. *See* Exhibit 2 (12/18/2014 Medical Release); *See also* K. Branch Dec at ¶¶6-8 The second medical release was a boiler plate release with desk duty until the 3 months follow up. *See* K.Branch Dec at ¶8. When is doctor returned in January Mr. Branch gave the police

officer description to his doctor and was able to obtain a full release to work as a police officer

on January 28, 2015.  *See* Exhibit 3 (January 28, 2015 doctor release)

## VII.        <u>Arguments and Authority</u>

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."

FED.R.CIV. P. 56(c); see also *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th

Cir.2008). The mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; there must be an absence of any

genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct.

2505 (1986). An issue is "material" if its resolution could affect the outcome of the action.

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc*., 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a

fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving

party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party

bears the initial burden of informing the court of all evidence demonstrating the absence of a

genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct.

2548(1986). Only when the moving party has discharged this initial burden does the burden shift

to the non-moving party to demonstrate that there is a genuine issue of material fact. Id. at 322. If

the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no

defense to the motion is required. Id. "For any matter on which the non-movant would bear the

burden of proof at trial, the movant may merely point to the absence of evidence and thereby

shift to the non-movant the burden of demonstrating by competent summary judgment proof that

there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d

715, 718–19 (5th Cir. 1995); see also *Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, Tex., 529 F.3d 519, 524 (5th Cir. 2008). The moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) 754 F.2d 1212, 1221 (5th Cir. 1985). ., 754 F.2d 1212, 1221 (5th Cir. 1985).

A. **Discrimination Termination under the Americans with Disabilities Act.**

The ADA prohibits discrimination against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a).In a discriminatory - termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the burden-shifting analysis, a plaintiff must establish a prima facie case of discrimination. *EEOC v. Chevron Philips Chem. Co.*, 570 F. 3d 605, 615 (5th Cir. 2009). To establish a prima facie discrimination claim, a plaintiff must show: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability. *EEOC v. LHC Group, Inc.*, 773 F.3d[coll]prima facie case of discrimination, then the defendant must articulate a legitimate, nondiscriminatory reason for termination. Id. at 694. If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that defendant's proffered reason is pretextual. Id. at 702. In the Rule 56 context, a prima facie case of discrimination plus a

showing that the proffered reason is pretextual is typically enough to survive summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146– 48, 150 (2000) (reaching a similar conclusion the standard for summary judgment). In the present case, Mr. Branch's disability claim will be evaluated under both the direct evidence of disability discrimination and under the burden shifting analysis. In the present case, Mr. Branch's disability claim will be evaluated under both the direct evidence of disability discrimination and under the burden shifting analysis.

B. **Mr. Branch has established Disability Discrimination under the Burden Shifting Analysis**

Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  As an initial matter, whether Mr. Branch qualifies as disabled under the ADA will be evaluated under subsection A of 42 U.S.C. § 12102(1).

1. **Waiver on Disability**

The City does not challenge the first element of Mr. Branch's prima facia case by admitting that he has a disability. Chief Brandal Jackson wanted to keep Mr. Branch on the force but could not because he felt Mr. Branch was too disabled to work. *See* Exhibit 6-Deposition transcript of Brandal Jackson "Jackson Depo" 85:23-86:10; 33:21 – 35:1; 35:17-36:11; 36:20-37:7.  In their motion for summary judgement, the City goes to the extreme to argue that Mr. Branch's disabilities prevents him from resuming his job duties. Chief Jackson testified that he perceived Mr. Branch as being too disabled to perform his job.  *See Jackson Depo* 33:21 – 35:1; 35:17-36:11; 36:20-37:7 Plaintiff's disability status under the ADA remains unchallenged.

### 2.   Mr. Branch Was Qualified for his Job.

Mr. Branch meet the second element of his *prim facia* case because he was qualified for the job he held.  Mr. Branch was a Lieutenant.  Sometimes he would work as a patrol officer. *See* Exhibit 7 Deposition Transcript of Darrel Branch ("*Branch Depo*") 27:1-4.  To show he was qualified for his position as a Lieutenant, Mr. Branch must show that either: (1) he could perform the essential functions of the job in spite of his disabilities; or (2) that a reasonable accommodation of his disabilities would have enabled him to perform the essential functions of the job. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 691 (5th Cir. 2014) 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam)); 42 U.S.C. § 12111(8). Mr. Branch was qualified to work as a Lieutenant.  Mr. Branch was also qualified to perform police duty if the City gave him the reasonable accommodation by allowing him additional time so that he could meet with his cardiologist and get a full medical release. (See page 11).

Mr. Branch Qualification has become an issue of material fact. In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action. *EEOC v. Chevron Phillips Chemical Co.,* LP, 570 F.3d 606, 618 (5th Cir. 2009).   Mr. Branch's qualification for police work should be analyzed based on the doctor's notes close to the time he was trying to return to work before and after he was fired. *See* Exhibits 1,2, and 3. Dr. Arvind Bhimaraj reviewed the City's job description for a Police Officer and a Lieutenant and on January 28, 2015 provided Mr. Branch with a full medical release back to work as a Lieutenant and police officer.

for Mr. Branch. Hence we presume what Mr. Branch has is a non-ischemic cardiomyopathy, which means that he has a heart impacted by some unknown factor (this is the scenario in ~50% of individuals who have a weaker than normal heart).

Mr. Branch has requested my opinion on his ability to handle his essential duties and responsibilities listed in the attachment he provided to me. In my opinion, keeping in mind his clinical recovery and stability for several months, he should be able to return to full duty. I have also consulted with his electrophysiologist, Dr. Valderrabano who agreed with the same in regards to his rhythm problems.

Please do not hesitate to contact me should you have any questions at 713-441-2762.

Sincerely,

Arvind Bhimaraj, M.D., FACC

*See* Exhibit 3 and Exhibit 4.

Dr. Bhimarj considered Mr. Branch's medical history, his police job description (Exhibit 4) and provided a medical release authorizing him to return to police work and encouraged the city to call him if it had any questions. *See* Exhibit 3 (January 28, 2015 medical release)  The City created a genuine issue of material fact about Mr. Branch's qualification by attempting to convincing Dr. Bhimaraj to retract retracted his January 28, 2015 medical release.  This effort only serve to create a more confusing record.  On the February 9, 2018, Dr. Bhimaraj provided to the City a declaration stating that in November of 2014, Mr. Branch was not physically capable of safely discharging the duties reflected in the "Police Officer Essential Duties and Responsibilities".  *See* Docket No. 54-2 pg. 2. Dr. Bhimaraj did not retracted his January 28, 2015 medical release using the same job description or explained why or when he changed his mind in the following three years. A reasonable fact finder will have to evaluate the credibility of Dr. Bhimaraj's February 2018 declaration and his January 28, 2015 medical release and make a determination if Mr. Branch was fit for police duty in January of 2015.

This glaring hole and contrast between Dr. Bhimaraj's January 28, 2015 medical release and his February 9, 2018 declaration was not explained by Dr. David Samuels when he adopted

it whole cloth and based his expert report on it. Dr. Samuels failed to address or rebut the findings of Dr. Bhimaraj that Mr. Branch was fit for police duty as of January 28, 2015.   A reasonable fact finder may find that Mr. Branch was a qualified individual with a disability between January 28, 2015 through 2016 and 2017.

The City has not provided any proper, uncontroverted, summary judgement evidence that Mr. Branch was medically incapable of performing his duties as a Lieutenant or police officer in January of 2015.   A reasonable fact finder can determine evaluate the January 28, 2015 medical release and determine that Mr. Branch was qualified to return to work as a police officer and Lieutenant.

### 3.  Mr. Branch Made An Accommodation Request Of Keeping His Position For One Month Until His Doctor Returns From Vacation

On November 19, 2014, Mr. Branch was ready to return to work. Dr. Bhimaraj released Mr. Branch to return to work with no restrictions. Exhibit 1. Despite a release to work with not restrictions, on November 26, 2014, the City notified Mr. Branch that his leave had expired, and that the City needed a list of his accommodations and a date certain as to when Mr. Branch could return to work without accommodations. *See* Exhibit 11 (City Letter).  *Branch Depo* 45:20 – 46:2.   Despite already providing this information, Mr. Branch returned to Dr. Bhimaraj's office and asked for a different letter. Dr. Bhimaraj was out of the country for the holidays. Dr. Bhimaraj's nurse wrote a note restricting Mr. Branch to desk duty. *See* Exhibit 7 *Branch Depo* 227:7-16.   On December 11, 2014, the City rejected the doctor's note and required a doctor's note that acknowledge the duties of a Lieutenant and Police Officer. *See* Exhibit 10 Declaration of Kim Branch ("K. Branch Dec."), at ¶¶5-6; Exhibit 17 (Chief Jackson's letter) Despite having permitted Mr. Branch to return from medical leave without any doctor authorized police duty work, the City required Mr. Branch to jump through additional hoops before he could return to

11

work. *See* Exhibit 17 and 18 (Letters from Chief Jackson).  For the first time in November of 2014, the City required one of their law enforcement officer to get a doctor to approve a list of police officer duties as part of a medical release.  The City's imposition of getting a doctor to review, acknowledge and approve their list of police duties before Mr. Branch can return to work is interference with Mr. Branch's rights and is retaliatory in nature.

On December 11, 2014, the City extended the deadline for Mr. Branch to get his revised medical release to December 19, 2014. *See* Exhibit 18 (Chief Jackson's letter).  This was still not enough time because Mr. Branch's doctor was on Christmas vacation and would not return until the following month (January 2015).  On behalf of her husband, Mrs. Branch told Chief Jackson at the City Council meeting on December 18, 2014 that Mr. Branch's doctor was out of the country for his Christmas Holiday and would not be able to provide a full release until his return the following month.  *See* Exhibit 10 K. Branch Dec. at ¶7.   Chief Jackson  was informed that that since the City rejected the November 2014 doctor's note, Mr. Branch was asking him to keep his job open from December until his doctor returns in January and gives him a doctor's note.  *See* K. Branch Dec. at ¶¶5-7.  Mr. Branch asked Chief Jackson to accommodate him by keeping his job open and give him more time to get a full medical release when his doctor returns back from vacation in January of 2016. *See Branch Depo* 54:12-55:8. *See Branch Depo* 63:16 – 64:5 and 179:24 – 182:11. The EEOC regulations and case law provide "additional leave, beyond the requirements of FMLA or vacation "as examples of reasonable accommodations. *See* 29 C.F.R § 1630.2(o)(2).  As soon as Dr. Bhijmaraj provided Mr. Branch with an updated medical release that met the City's new December 2014 requirement, acknowledging that he has read the police officer's job duties, Mr. and Mrs. Branch went directly to the police department. *See* K. Branch Dec. at ¶¶12.  Mr. and Mrs. Branch gave the January 28,

2015 doctor's note to Chief Jackson and asked for Mr. Branch to be hired back. *See* K. Branch Dec. at ¶¶13. The City refused to engage in an interactive process, refused hire Mr. Branch back, and denied him his administrative appeals process. All of this could have been prevented had the City granted Mr. Branch's accommodation request to keep him on unpaid leave until January 2015 so that he could get an updated medical release upon his doctor's return from vacation. Extended leave has also been explicitly identified as a reasonable accommodation under the ADA in nearly every circuit. *See, e.g., Garcia-Ayala v. Lederle Parenterals, Inc*. 212 F.3d 638, 648-50 (1st Cir. 2000); *Graves v. Finch Pruyn & Co., Inc*., 457 F.3d 181, 185 & n.5 (2d Cir. 2006); *Walton v. Mental Health Ass'n of Southeastern Pa*., 168 F.3d 661, 671 (3d Cir. 1999); *Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995) (rejecting unaccrued paid leave as a reasonable accommodation, but citing with approval the EEOC Interpretive Guidance regarding unpaid leave and accrued paid leave as reasonable accommodations); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781-83 (6th Cir. 1998); *Haschmann v. Time Warner Ent Co*., 151 F.3d 591, 601 (7th Cir. 1998); *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 n.3 (8th Cir. 1999); *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir. 1999); *Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 967 (10th Cir. 2002); *Holly v. Clairson Indus, LLC*, 492 F.3d 1247, 1263 (11th Cir. 2007); *Taylor v. Rice*, 451 F.3d 898, 910 (D.C. Cir. 2006). The City violated ADA by refusing to extend Mr. Branch's leave from December 2014 until his doctor returned in January of 2015 and terminating him before he had a chance to obtain and updated medical release that conformed with the new terms they imposed on him.

Mr. Branch's request to keep his job open from December until his doctor returned in January need not be in writing and he does not have to mention the ADA or use the phrase

"reasonable accommodation." The employer may be obligated to provide a reasonable accommodation even where the employee does not identify the specific medical condition for which she seeks accommodation. *See EEOC v. Chevron Phillips Chem. Co*., 570 F.3d 606 (5th Cir. 2009), (the court held that the worker's broaching the subject of telecommuting along with the employer's knowledge that the worker was on leave with the disability was sufficient to create a fact issue).  Mr. Branch has presented summary judgement evidence which would allow a reason able fact finder to conclude that Mr. Branch made a request for accommodation to keep his job open until his doctor returned the following month and the City discriminated against him by failing to accommodate his disability

### 4.   The City failed to Accommodate Mr. Branch's request for additional leave

The City's personnel policy does not require that an employee be terminated when his or her sick leave has been exhausted. *"See Jackson* Depo.54:22-56:1"  Nothing in the City's written policy required that an employee like Mr. Branch be terminated for having excessive medical leave. *" See Jackson* Depo. 57:2-57:23; 58:18-58:22 Chief Jackson terminated Mr. Branch because of his inability to perform his job duties, his doctor's notes and the restrictions placed on him, and because he had exhausted all of his time. *See Jackson* 58:8-58:1

The City's Personnel policy states that it does not discriminate against people with disability. *Jackson* 58:22-25; Exhibit 9 (excerpt from City's Personnel Policy).

Section 2-19 REASONABLE ACCOMMODATION FOR DISABILITY of The City Personnel policy requires that the city review each person with a disability for accommodation. However, an employee with a disability who feels that the City has failed to provide reasonable accommodation is entitled to appeal the decision to City Council.   *See* Exhibit 9 Jackson 59:6-60:6.  After talking to the City Attorney, Chief Jackson denied Mr. Branch the right to appeal his

termination. *See Jackson* 60:07-61:04. Chief Jackson was aware that Mr. Branch's Doctor was not available in December. *See Jackson* Depo  69:21-71:21  It is the employee's responsibility to request a reasonable accommodation. Id. § 1630.9.   Mr. Branch has presented summary judgement evidence which would allow a reason able fact finder to conclude that the City discriminated against him by failing to accommodate his disability.

### 5.  The City Failed Engage in the Interactive Process

The ADA generally provides that employers should engage in an "informal, interactive process" to identify a "reasonable accommodation." The EEOC's guidance specifies four, broad steps for employers and employees to take in engaging in the interactive process:

 (1) Analyze the particular job involved and determine its purpose and essential functions; (2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

 (3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position, and

 (4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

*See* Appendix to 29 C.F.R. § 1630.9.

"Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. § 1630.9, App. (Westlaw) (Interpretive Guidance on Title I of the Americans with Disabilities Act)." *Cook v. Morgan Stanley Smith Barney*, No. H-13-1321, 2014 U.S. Dist. LEXIS 112681, at *21-22 (S.D. Tex. Aug. 14, 2014)...

15

Here there was a complete absence of any interactive discussion. Mr. Branch has already discussed the failed attempts at an interactive discussion. On December 18, 2014, Dr. Bhimaraj's nurse released Mr. Branch to return to work effective December 16, 2014 but restricting him to desk duty for three months. (*See* page 11). In the letter terminating Mr. Branch the City said that Mr. Branch's doctor restricted him to desk duty of six months. (*See* Exhibit 12 (01/05/2015 letter terminating Branch)).   Nowhere in this letter does Chief Jackson mentioned Mr. Branch's request that the City wait for Dr. Bhimaraj to return from holiday. (*See* page 11).

On January 9, 2015, Mr. Branch appealed his termination in accordance with the Brookshire Police Department Policies and Procedures.   (*See* Exhibit 13 (01/09/2015 letter appealing Branch's termination)). Mr. Branch copied Mayor Scott on that letter. Exhibit 13. On January 14, 2015, the City said Mr. Branch had no appeal rights.   (*See* Exhibit 14 (01/14/2015 letter denying right to appeal)).   Again, the City made no mention of Mr. Branch's request to allow time for Mr. Branch's doctors to return to town and release Mr. Branch to return to work. (Exhibit 14).

On January 16, 2015, Mr. Branch again attempted to engage in a dialogue seeking an accommodation. (*See* Exhibit 15 (01/16/2015 letter objecting to denial of appeal)).

On January 28, 2015. Mr. Branch obtained a doctor's letter addressing all the City's concerns and returning Mr. Branch to work. Exhibit 3. On January 29, 2015, Mr. Branch sent the January 28, 2015 doctor letter to the City. (*See* Exhibit 16 (01/29/2015 email sending release and again asking for an accommodation.)). Again, the City failed to engage in an interactive dialogue.

This failure alone is sufficient to deny the City's motion. "Since the evidence of the extent to which the parties engaged in this interactive process conflicts, the court is unable to

grant summary judgment at this time. MSSB's motion for summary judgment on the accommodation claim is therefore DENIED." *Cook*, No. H-13-1321, 2014 U.S. Dist. LEXIS 112681, at *23.

### C. **Mr. Branch Exhausted His Administrative Remedy**

In filing his EEOC charge, Mr. Branch provides a narrative that would support a charge of retaliation.  In his EEOC charge Mr. Branch began his narrative by describing that he is a police office, his medical leave, his ADA accommodation requests, and his termination from the police department. Docket No. 54-7. Mr. Branch describe that when provided the City with the December 8, 2014 medical release, Chief Brandal Jackson rejected it and required him to get another doctor's notes. Docket No. 54-7  Mr. Branch then proceeds to describe how the City fired him after he did what he told him but obtained two additional doctor's notes.  This narrative is adequate to give notice of Mr. Branch's retaliation complaint. The City retaliated against him for exercising his ADA rights by refusing to permit him to return to work, rejected his doctors notes, and firing him after he had followed their return to work instructions. Docket No. 54-7 pg.2 (Page 3 of EEOC Charge).  Mr. Branch also described how he attempted to appeal his termination but was denied access to the City appeals process.  Mr. Branch describes retaliatory actions by the City in his EEOC charge.

## VIII.    <u>CONCLUSION</u>

 Mr. Branch has met his *prima facie* case of disability discrimination.  Accordingly, the Court should deny summary judgement.

Respectfully submitted,

TRAN LAW FIRM

*/S/ Trang Q. Tran*
Trang Q. Tran
Federal I.D: 20361
2537 South Gessner Road, Suite 104
Houston, Texas 77063
(713) 223 – 8855 Telephone
(713) 623 – 6399 Facsimile
ttran@tranlawllp.com
service@tranlawllp.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on Friday, April 27, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and a copy of this filing has been forwarded to all known parties in accordance with the ECF local rules:

William Helfand
Brian Gargano
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
bill.helfand@lewisbrisbois.com
brian.Gargano@lewisbrisbois.com

*/S/ Trang Q. Tran*
Trang Q. Tran